THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-
ENTS, *v.* EDWARD HOVEY, APPELLANT.

*Practice — motion for a new trial in a capital case upon the ground of newly discovered evidence — Code of Criminal Procedure, secs. 465, 466 and 517 — What must be shown to justify the court in making the order — appealability of such order to the General Term.*

The defendant was tried and convicted of murder in the first degree for shooting his sister-in-law on April 20, 1882. There was present at the time of the shooting of the deceased, the defendant and his wife. The defendant was examined in his own behalf and testified that the shooting was accidental, stating in detail how it occurred and what he did and said on that day. It appeared by the testimony of several of the witnesses, and to some extent by the testimony of the defendant himself, that he had been drinking for some days before the commission of the crime, and that he was intoxicated at the time of its commission. The conviction was affirmed by the General Term on March twenty-second, and by the Court of Appeals on July 5th, 1883.

On July 11, 1883, the defendant moved for a new trial, under sections 465, 466 and 517 of the Code of Criminal Procedure, upon the ground of newly discovered evidence. The affidavits, which were made by public officers attached to the police and prison force of New York, tended to show that the defendant was

arrested on April 15, 1882, and committed to prison for three days for intoxica-
tion; that at the time of his arrest and while in prison he talked wildly and acted
violently so that it was necessary to confine his hands, and that at the time of his
discharge he had not fully recovered from the effects of the liquor; that upon
the day after his arrest for the homicide the city physician visited him and
found him in a highly nervous and excited condition, the result of the excessive
use of alcohol; that he complained of being unable to sleep or control himself,
which symptoms resulted from the abuse of alcohol and the deprivation of seda-
tives he had been in the habit of taking; that he was under treatment for these
troubles for some two weeks; that in the opinion of the said physician at the
time of such examination the mind of the prisoner was in such a condition
that he was oblivious of his actions during the week preceding said examina-
tion. These facts were not communicated to the defendant's counsel until
the latter part of June, 1883.

*Held*, that it was not probable that the evidence, if received, would have changed
the verdict.

That the evidence had not been discovered since the trial within the meaning of
the said section, inasmuch as the facts of his arrest, confinement and sickness
must have been known to the defendant, although he might not have known
the exact condition, physically and mentally, in which he then was, and that
it was his duty to have made these facts known to his counsel if he deemed
them important; that the only fact newly discovered was that it might have
been of some importance to himself if evidence of these facts had been pro-
duced on the trial.

That as the condition and mental operations of the defendant were questions
necessarily involved upon the trial the evidence was cumulative.

That the failure of the defendant to produce the evidence upon the trial was due
to his want of diligence.

A majority of the court were of the opinion that the order of the Special Term
was not appealable to the General Term, but concluded to hear the appeal
without finally determining this question, because one of the judges entertained
a different opinion and because the case was a capital one.

Appeal from an order of the Special Term denying a motion for
a new trial, made under sections 517, 465 and 466 of the Code of
Criminal Procedure, upon the ground of newly discovered evidence.

Upon the hearing a motion was made to dismiss the appeal upon
the ground that the order of the Special Term was not appealable.

The defendant was sentenced on the 29th day of September, 1882,
to be hanged for murdering his wife on April 20, 1882, by shooting
her. The conviction was affirmed on appeal to the General Term
(29 Hun, 382) on March 22, 1883, and by the Court of Appeals on
July 5, 1883. The motion for a new trial was made on July 11
and denied July 18, 1883. The facts upon which the motion was

based did not come to the knowledge of the defendant's counsel until the latter part of June, 1883.

The newly discovered evidence tended to show that on the 15th day of April, 1882, eleven days prior to the homicide, the prisoner was found insensible in a hall-way; that he was arrested by a police officer and on the following morning was arraigned before a police justice charged with intoxication; that at the time of his arrest the prisoner was very much under the influence of liquor and had the appearance of a man who had been drinking for some days; that on his way to the station the prisoner talked wildly and was very violent in his conduct; that at the time of his committal to prison in default of the payment of the fine imposed he was still very much under the influence of liquor and had all the appearance of a man who had been drinking to excess; that while in prison he became very violent and it became necessary for his keeper to place a strong leather belt around the prisoner's waist with iron hand-cuffs attached in which his hands were placed so as to prevent him from doing himself any harm or injury, and also to prevent him from doing others any harm or injury; that at the time of his discharge from prison, seventy-two hours subsequent to the time of his arrest, he had not fully recovered from the effects of the liquor he had previously been indulging in; that upon the day immediately succeeding the homicide the prisoner was visited by the physician attached to the city prison and was found to be in a highly nervous and excited condition, the result of the excessive use of alcohol; that he complained of being unable to sleep or to control himself, which was due to the abuse of alcohol and the deprivation of sedatives such as opium, chloral and bromide of potassium, to the use of which he had been addicted for some time; that from time to time while in prison charged with the homicide he was found suffering from nervousness and insomnia, and in the opinion of the physician attached to the city prison for the last six years, and one of the examiners in lunacy given as a medical expert, the mind of the prisoner was in such a condition that he was oblivious of his actions during the week preceding said examination. The affidavits establishing these facts were made by the officer by whom the arrest was made, by the keeper of the prison and by the city physician in attendance thereon.

*John Vincent,* for The People.

*William F. Kintzing* and *Thomas F. Grady,* for the prisoner.

After the closing of the argument the opinion of the court was pronounced orally by Davis, P. J.

The court have given to the case on this appeal and to the motion to dismiss the appeal, their careful consideration and have reached conclusions that will now be indicated.

As to the appealability of the order a majority of the court are of opinion that no appeal lies in such a case. Section 517 of the Code of Criminal Procedure declares in what cases appeals may be taken by the defendant in criminal cases. It is in these words: "An appeal to the Supreme Court may be taken by the defendant from the judgment on a conviction after indictment, and upon the appeal any actual decision of the court in an intermediate order or proceeding forming a part of the judgment-roll as prescribed by section 485 may be reviewed."

Section 485 makes provision for the inclusion in the judgment-roll which may be brought up by the appeal under section 517, of "a copy of the minutes of any proceedings upon a motion either for a new trial or in arrest of judgment."

Provision is therefore made for the revision of motions of, this character when they are embraced in the judgment-roll as provided by section 485. But we look in vain in the act for any provision for an appeal on a motion for a new trial except in the case and form presented by section 517. At common law no appeals could be brought from judgment orders or interlocutory proceedings in criminal cases. The right of appeal in such cases is purely statutory; and in cases where there is no statutory provision the right of appeal does not exist. The Code has made no statutory provision for an appeal from an order denying a motion for a new trial in any case where the motion is made after final judgment in the action, unless the findings and order be embodied in the judgment-roll. It has, however, by the provisions of the act of 1882 (now section 517 of the Criminal Code) granted to the convicted party an opportunity to make a motion in the trial court in capital cases, or when the application cannot be made to the trial court prior to the execution of the sentence, by application to a

justice of the Supreme Court or a Special Term thereof. But while it has given this new privilege to a party convicted of a capital crime, where sentence of death has been pronounced, the legislature has not seen fit to superadd the right of appeal by any statutory provision. It has only granted an additional privilege to the convicted party which terminates with the application to the court or judge before whom the motion is made. A majority of the court have come to the conclusion that this is the correct view of the statutory provisions and of the law in respect of the right of appeal in such cases.

But notwithstanding the views of the majority of the court, and especially because one of the judges entertains a different opinion and because the case is a capital one involving the life of the defendant, we have concluded that it is our better course to consider the appeal and dispose of it on its merits without finally determining the question whether or not an appeal lies.

The provision of the act of 1882 (now section 466 of the Code of Criminal Procedure) allows in capital cases at any time before the sentence is executed, an application to be made to the court before which the trial was had, or if that court be not in session to any justice of the Supreme Court or any Special Term thereof, for a new trial upon several grounds. These grounds are enumerated by section 465. They are seven in number, upon all or either of which a motion of this character can be made under section 466. But when the motion is founded upon the seventh subdivision of section 465 the Code expressly prescribes what must appear as sufficient grounds for granting a new trial.

That subdivision is in these words: "When it is made to appear by affidavit that upon another trial the defendant can produce evidence such as, if before received, would probably have changed the verdict; if such evidence has been discovered since the trial; is not cumulative; and the failure to produce on the trial was not owing to want of diligence."

On such a motion the court or judge is to act not only upon the affidavit presented, but also, of course, upon the testimony and proceedings had and taken upon the trial at which the conviction occurred; and it must be considered whether the evidence claimed

to be newly discovered, if it had been given upon the former trial, would probably have changed the verdict.

Now, if we take the case the prisoner made for himself by his own testimony, and assume that his testimony would have been the same if this new evidence had also been produced, we can hardly conceive it possible for the jury to have rendered any other verdict; because his evidence and the manner in which he detailed the act which constituted the homicide, and states what he did and what he said on that day, and the whole effect of his version of the transaction would be in direct conflict with all that is sought to be added upon the new trial. If the alleged new evidence had been given in the case, the jury would have been driven to the necessity of rejecting his own account of the affair in order to give him the benefit of such evidence, so that we are not able to come to any conclusion different from that reached by the justice at Special Term upon the question whether it would probably have changed the verdict. But if we had reached a different conclusion we must then be satisfied that the evidence has been discovered since the trial, within the meaning of the law. That it existed before the trial is indisputable. Has it been discovered since the trial within the meaning of the law?

We must assume that the prisoner at the time of the trial knew that he had been arrested ten days previous to the commission of the crime, in a state of intoxication, and had been in prison three days, and subject to the close confinement described in the affidavit, by reason of his conduct, although he may not have known the exact condition, physically and mentally, in which he then was. All that preceded the crime, therefore, in respect of his condition, so far as relates to the intoxication and the arrest and imprisonment for intoxication, were known to the prisoner. If those facts were known to him before the trial they cannot properly be called newly discovered evidence. They were facts which it was his duty, if he regarded them as important, to have made known to his counsel and to have had them brought to the attention of the court by summoning witnesses.

What occurred after the commission of the crime and his arrest as detailed by the affidavit of the prison doctor is also not newly discovered. It is not the development of some unknown fact, but

of facts which had previously existed, and must have been well known to the accused. If he were under the treatment of the medical man who makes the affidavit, is there any question but that that fact was within his knowledge. The only thing newly discovered is the fact that this evidence might have been of some importance to himself if it had been produced. That is not what the law contemplates where a party seeks a new trial upon this ground.

But, again, the new evidence must appear not to be cumulative. The fact that it is not cumulative must be shown affirmatively. In this case it appeared on the trial by the testimony of several of the witnesses, and to some extent by the testimony of the defendant himself, that he had been drinking for some days before commission of the crime, and that he was intoxicated at the time of its commission. The subject, therefore, of this condition by reason of the use of intoxicating drinks, was a circumstance presented by the testimony for the consideration of the jury. It would be cumulative evidence in the meaning of the law to give additional proof of his intoxication and of its effect prior to the commission of the crime by producing or further examining the witnesses who could testify to those facts. There is therefore no doubt that the learned court was correct in holding that if this evidence was produced on a new trial it would be cumulative in its character. We do not lose sight of the fact, insisted upon by the learned counsel, that the evidence goes so far as not merely to show habits of intoxication, but also that the prisoner had by the use of sedatives, as well as of intoxicating liquors produced a diseased condition of the mind which he was incapable of controlling. That evidence, however, would of necessity have been required to be sufficient in strength to convince the jury that his mind was in such a condition as to be incapable of forming the deliberation and premeditation required to constitute murder in the first degree. But evidence upon that question was of necessity before the jury. The whole case, as a matter of course, involved the condition and mental operations of the accused party at the time of the commission of the crime. In such cases that question is one of primary importance. If therefore any evidence is produced on the trial tending to establish that the mental condition of the party was such that he did not, or could not form,

the deliberation required by the statute, all that has a tendency to make that evidence more potent in its influence on the minds of the jury is cumulative. So that if an accused party relies for the purpose of proving the character of the crime, upon the condition of his mind at the time of doing the act, he must proceed to establish that condition by the production of all evidence bearing upon that question within his knowledge, or which he could have procured by proper diligence. In this case the prisoner went into that evidence to a certain extent. He brought before the jury the proof of the fact that he had been drinking and was intoxicated to some degree on that morning; and accompanied that evidence with his statement clear and coherent, and as it appears upon the record if credited by the jury, justifying a verdict of minor character because of the alleged accidental nature of the act which caused the death. All the evidence that is offered here relative to his condition is in our opinion cumulative within the sense of the law.

In addition, however, to the things already noticed, the section requires it to appear that the failure to produce the alleged newly discovered evidence on the trial was not owing to want of diligence.

It is perfectly obvious, as we think, that the failure to produce this evidence upon the trial was owing to want of diligence. We do not mean to impute want of diligence, in any sense of neglect of duty, to the counsel employed. They have at no time been lacking in diligence in doing their whole duty toward this prisoner, and the motion now pending is in itself convincing evidence not only of diligence but of extreme diligence in favor of this unhappy man. But what the court mean by lack of diligence is the omission on the part of the accused to disclose the facts to his counsel so as to enable them to judge whether matters of any kind were within his knowledge, which would be important to him on the trial. Diligence on his part would have disclosed the fact of his arrest ten days before for intoxication, his confinement in prison and the treatment he was subjected to, and enabled them to judge whether that indicated the condition of mind now claimed.

So, also as it seems to us, very slight diligence on his part would have disclosed his illness in prison and the attendance he received from the doctor; and a single question to the doctor would have developed the facts as to the condition of the prisoner's mind for a

week previous to the commission of the crime judging by his condition as the doctor's affidavit states it, several days after his imprisonment for the crime. On none of these several requirements of the seventh subdivision of section 465 of the Code, do the affidavits come up to what the law demands.

The result is that this court is of opinion on the merits that the decision of Mr. Justice Donohue, at Special Term, was in all respects entirely correct; and that it is our duty to affirm the order, without dismissing the appeal because the order was not appealable, as we might do under the opinion of the majority of the court.

The order of the Special Term must, therefore, be affirmed.

Present — Davis, P. J., Brady and Cullen, JJ.

So ordered.